# UNITED STATES DISTRICT COURT
for the
Eastern District of Tennessee

| | |
|---|---|
| United States of America<br>v.<br><br>JASMINE MAXINE JOHNSON<br><br>_____<br>*Defendant(s)* | )<br>)<br>) Case No. 3:23-MJ-2032<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 26, 2023__ in the county of __Knox__ in the __Eastern__ District of __Tennessee__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Possession with the intent to distribute 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Section 841 (a)(1) and Section 841(b)(1)(A). |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Thomas L. Cook, KCSO/DEA TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __01/27/2023__

_____
*Judge's signature*

City and state: __Knoxville, Tennessee__   Jill E. McCook, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

AFFIDAVIT IN SUPPORT OF A            )
CRIMINAL COMPLAINT AGAINST           )   Case No. 3:23-MJ-2032
JASMINE MAXINE JOHSON                )
FOR VIOLATIONS OF                    )
21 U.S.C. § 841(a)(1) and (b)(1)(A)  )

## AFFIDAVIT IN SUPPORT OF A CRMINAL COMPLAINT

I, Thomas L. Cook, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), United States Department of Justice. I have been a TFO with the DEA since October 2021, and I am presently assigned to the Knoxville District Office. I am also employed by the Knox County Sheriff's Office (KCSO) and have been so employed since November 13, 2017. I initially started with the KCSO in August 2014, as a Corrections Officer and Special Operations Response Team Officer. In July 2016, I graduated from the KCSO Regional Training Academy, leaving the KCSO shortly and returning in November 2017 where I have been continuously employed as a Tennessee P.O.S.T certified police officer assigned to the Narcotics Unit. I annually attend at least 40 hours of in-service training to remain knowledgeable in the current techniques and law as it pertains to law enforcement. I have conducted and participated in numerous investigations involving controlled substances and other general investigations of state and federal laws. I have been involved in the detection and investigation of state and federal drug violations, including the sale,

1

distribution, importation, possession, and conspiracy to possess or sell and distribute various narcotics and controlled substances. I have received specialized training in drug enforcement from the KCSO Regional Training Academy, the Drug Enforcement Administration, the Tennessee Dangerous Drug Task Force, and Regional Counterdrug Training Academy. My training has been in the field of drug identification, current drug trends, surveillance techniques, interview, and interrogation techniques, as well as evidence collection and analysis.

2. Throughout my career at the KCSO and DEA, I have participated in numerous narcotics investigations, including multiple drug-distribution conspiracy investigations. In my experience with drug-conspiracy investigations, I have used confidential informants, wire and physical surveillance, telephone toll analysis, investigative interviews, and the service of search and arrest warrants to detect, document, and prosecute drug-trafficking activities.

3. I have interviewed numerous drug dealers, drug users, and knowledgeable confidential informants about the lifestyles, appearances, and habits of drug dealers and users. I have become familiar with the manner in which narcotics traffickers smuggle, package, transport, store and distribute narcotics, as well as how they collect and launder drug proceeds. I am also familiar with the manner in which narcotics traffickers use telephones, cellular-telephone technology, intentionally vague language, coded communications and slang-filled conversations, false and fictitious identities, and other means to facilitate their illegal activities and to thwart law-enforcement investigations. I have had discussions with other law enforcement personnel about the packaging and preparation of narcotics, the distribution methods

2

of illegal narcotics traffickers, and the security measures that narcotics traffickers often employ. I have also examined documentation of various methods by which fentanyl, methamphetamine, heroin, cocaine, cocaine base (crack), marijuana, and other illicit drugs are smuggled, transported, and distributed. I have participated in surveillance of narcotics traffickers. During these surveillances, I have personally observed narcotics transactions, counter-surveillance techniques, and the ways that narcotics traffickers conduct clandestine meetings. I have also participated in investigations that involved the interception of wire communications, and I have been directly involved in the review and deciphering of intercepted coded conversations between narcotics traffickers that were later corroborated by surveillance or by defendants' statements.

4. The statements contained in this affidavit are based, in part, on information provided by agents of the Tennessee Bureau of Investigation, deputies with the KCSO, and other law enforcement officers; my training and years of investigative experience; my consultation with other experienced agents and officers; and my personal participation in this investigation.

5. As a DEA task force officer, I am authorized to investigate violations of the laws of the United States and am a law enforcement officer with authority to execute warrants issued under the authority of the United States.

6. This affidavit is being submitted in support of a criminal complaint charging JASMINE MAXINE JOHNSON in violation with possession with intent to distribute controlled substances, namely methamphetamine, in violation of Title 21, United States Code (U.S.C.) § 841(a)(1) and (b)(1)(A).

7. Because this affidavit is being submitted for the limited purpose of supporting the issuance of a criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to support the complaint.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, U.S.C., Sections 841(a)(l) and (b)(1)(A), have been committed by JASMINE MAXINE JOHNSON.

## PROBABLE CAUSE

9. On January 26, 2023, TBI Agent Neal Baldwin and I conducted surveillance at the Greyhound bus stop, 100 Kirkwood St., Knoxville, Tennessee, 37914, in an unmarked vehicle. We surveilled the bus stop for possible drug-trafficking from individuals arriving from Detroit, Michigan. Based on my experience with other investigations and the experience of other officers at the KCSO, I know that individuals have used the Greyhound bus system as a means of transporting illegal narcotics from Detroit, Michigan for distribution in Knoxville, Tennessee, and have done so for many years.

10. I observed JASMINE MAXINE JOHNSON step off of the Greyhound bus and got into a blue Honda Accord, which had a license plate registered in the state of Texas. JOHNSON was carrying a single, black duffel bag.

11. Agent Baldwin and I then began following and pacing the Honda Accord. I observed the Honda Accord speeding: it was traveling 65mph in a 55mph construction zone.

4

12. Due to the traffic infraction for speeding, I conducted a traffic stop of the Honda Accord on the exit ramp to Broadway Street from Interstate 640 West in Knoxville, Tennessee.

13. Upon approach of the Honda Accord, Agent Baldwin and I approached the driver and discovered that he was operating a ridesharing service for Lyft. The second occupant, located in the rear driver's side seat, was JASMINE MAXINE JOHNSON.

14. I retrieved the Lyft driver's identification and registration. I then began checking the driver's identification and registration in our database. I also began writing the Lyft driver a warning ticket for the traffic infraction.

15. As I checked the identifications of the Lyft driver and JOHNSON, Agent Baldwin asked JOHNSON where she was traveling; JOHNSON responded that she was traveling to Knoxville, Tennessee from Detroit, Michigan to visit her mother for multiple days. While conversing with JOHNSON, Agent Baldwin noticed JOHNSON grasping a single black duffel bag.

16. While I was checking the driver's identification and registration to write the Lyft driver a warning ticket, a K-9 unit was routed and arrived at the scene. The K-9 unit conducted a free-air sniff of the area around the Honda Accord. Before the background check was complete to issue the warning ticket, the K-9 unit alerted to the presence of illegal narcotics inside the Honda Accord.

17. Based on the K-9 unit's alert to the presence of illegal narcotics, Agent Baldwin and I conducted a full search of the Honda Accord. Inside the black duffel bag possessed by JOHNSON in the rear driver's side area, Agent Baldwin and I

5

located approximate 494.2 grams of suspected methamphetamine and approximate 1,242.8 grams of suspected fentanyl.

18. Agent Baldwin and I read JOHNSON her *Miranda* rights and she agreed to be interviewed. JOHNSON admitted that the recovered methamphetamine and fentanyl were in her possession in her role as a courier. JOHNSON stated that she was transporting the recovered methamphetamine and fentanyl from Detroit, Michigan to Knoxville, Tennessee to meet an unknown individual to provide the individual with the methamphetamine and fentanyl for distribution. JOHNSON also stated that she had transported illegal narcotics on at least three occasions from Detroit, Michigan to Knoxville, Tennessee, including the present incident. JOHNSON further said that she had transported illegal narcotics from Detroit, Michigan to other cities, including Atlanta, Georgia and Cincinnati, Ohio. JOHNSON was arrested and taken to the Knox County Jail.

19. Following the search, I did not issue the Lyft driver the warning ticket; but I did retain my copy of the partially completed citation.

20. A preliminary test on the recovered methamphetamine, a test that I and others in law enforcement know is accurate, revealed that the substance was, in fact, methamphetamine. Field testing for the suspected fentanyl was ambiguous.

## CONCLUSION

21.     For the reasons stated above, I submit that there is probable cause to believe that JASMINE MAXINE JOHNSON knowingly and intentionally possessed with intent to distribute controlled substances, namely methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

Respectfully submitted,

THOMAS L. COOK
KCSO/DEA TFO

Subscribed and sworn to before me on this
27th day of January 2023.

JILL E. McCOOK
UNITED STATES MAGISTRATE JUDGE

7

Case 3:23-mj-02032-JEM   Document 1   Filed 01/27/23   Page 8 of 8   PageID #: 8